[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 21-13809

Non-Argument Calendar

————————————————

MICHAEL PRUITT,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-00436-AKK

————————————————

Before JORDAN, NEWSOM, and LUCK, Circuit Judges.

PER CURIAM:

Michael Pruitt applied for disability and supplemental security income benefits, but the Social Security Administration denied his applications. The district court upheld the denial, and we affirm.

## I.

Pruitt is a former bus and truck driver who has suffered several serious injuries. In 2011, Pruitt accidentally shot himself in his right foot near the ankle. And in 2012, Pruitt was involved in a vehicle crash that knocked him unconscious, herniated his stomach, ruptured his diaphragm, and required lung intubation and corrective surgery. In 2014, Pruitt's doctor cleared him for work without restrictions. Between 2014 and 2017, Pruitt worked several different jobs but continued to seek medical attention for back and leg pain. In 2018, Pruitt briefly worked at a Styrofoam factory but had to quit because the lifting requirements caused him too much pain.

From September 2017 to December 2018, Pruitt received medical treatment from Dr. Larry Scarborough. Dr. Scarborough noted that Pruitt suffered from back and joint pain, an abnormal gait, and decreased mobility. Dr. Scarborough also completed a Medical Health Source statement that indicated Pruitt had difficulty concentrating for more than two hours. Pruitt also sought treatment from Cherokee Pain Management between November 2017 and June 2018. There, he was found to have decreased range

of motion and reported pain in his back and limbs.  He was pre-scribed Percocet to manage his pain.

After filing his initial claims for disability benefits, Pruitt re-ceived consultative evaluations for his physical and mental health. Dr. Ronald Borlaza evaluated Pruitt in July 2017, and Pruitt re-ported difficulty walking and pain in his foot, hips, neck, and spine. Pruitt also told Dr. Borlaza that he was able to do laundry and cook, although his fiancée helped him bathe and dress.  Dr. Borlaza opined that Pruitt could sit for up to four hours, manually handle objects without limitation, and occasionally climb stairs—but not stand for more than two hours or climb a ladder.  Dr. Samuel Flem-ing evaluated Pruitt's mental health and diagnosed him with a neu-rocognitive disorder due to a traumatic brain injury from the car crash.  Dr. Fleming opined that Pruitt could understand and carry out instructions but would have trouble remembering them.  He also opined that Pruitt would be able to respond appropriately to supervision and work pressures.

## II.

Pruitt filed petitions for disability benefits, disability insur-ance benefits, and supplemental security income on June 20, 2017. His claim was initially reviewed by a disability officer, who ob-tained medical opinions from two agency-appointed medical ex-aminers, Drs. James Stallworth and Kirstin Bailey.  Dr. Stallworth concluded that Pruitt was physically able to work, though only with lifting restrictions.  Dr. Bailey evaluated Pruitt's mental con-dition and found that, though he had some memory and attention

limitations, Pruitt would be able to "tolerate ordinary work pressures" and would benefit from a "familiar work routine." The disability officer determined that Pruitt was not disabled, and Pruitt requested a hearing before an administrative law judge.

In April 2019, after holding a hearing and evaluating the medical evidence, the administrative law judge determined that Pruitt was not "disabled" as defined by the Social Security Act and thus denied his claims. The administrative law judge evaluated Pruitt's claims through the five-step process outlined in 20 C.F.R. section 404.1520.

The administrative law judge first concluded that Pruitt had not engaged in substantial gainful activity during the claims period. *See* 20 C.F.R. § 404.1520(a)(4)(i). Although Pruitt was briefly employed in 2018, she determined this was an "unsuccessful work attempt" because he quit from pain. She also concluded that Pruitt's depression and spinal issues qualified as severe impairments. However, the administrative law judge determined that Pruitt did not show an impairment or combination of impairments that met the severity requirements in the disability benefits regulations. *See* 20 C.F.R. app. 1 § 404; 20 C.F.R. § 404.1520(d). She found that, while Pruitt had some "mild" or "moderate" limitations, both physical and mental, these limitations were not enough to qualify him as disabled.

The administrative law judge relied on Drs. Bailey and Stallworth's medical opinions to conclude that Pruitt was mentally able to function independently, albeit with moderate mental

impairments. She also found that Pruitt's own description of his physical limitations was "not entirely consistent" with the medical evidence before her. That evidence included Dr. Borlaza's consulting examination report—which highlighted Pruitt's ability to perform some physical activities—and other medical records between 2017 and 2018 that did not mention substantial physical limitations. It also included Drs. Bailey and Stallworth's opinions that Pruitt's mental and physical limitations were mild enough that he could work at a "light level." Though the administrative law judge clarified that she was not required to adopt the consulting doctors' opinions, she found Drs. Bailey and Stallworth persuasive because they were experienced at evaluating claims for disability benefits.

On the other hand, the administrative law judge found that Drs. Fleming, Scarborough, and Borlaza's opinions that Pruitt was unable to work were unpersuasive in light of Pruitt's "medical records as a whole." Dr. Fleming had opined that Pruitt had a neurocognitive disorder that caused memory problems, but the administrative law judge noted that Pruitt was able to handle his own finances, take care of his child, and live on his own. She also discredited Dr. Fleming's opinion about Pruitt's mental limitations based on Pruitt's brief 2018 employment, which he left due to physical pain and not mental limitations. Likewise, Dr. Scarborough claimed that Pruitt was unable to concentrate for more than two hours, but the administrative law judge found no evidence that Pruitt's past employment history and other daily functions "indicate[d] disabling mental limitations. Finally, the administrative law

judge explained that Dr. Borlaza's opinion that Pruitt could only stand for two hours and sit for four hours was inconsistent with other evidence and opinions from other doctors. And she noted that Dr. Borlaza's opinions were based on Pruitt's self-reported pain instead of "objective medical evidence." The administrative law judge concluded that because Pruitt had the residual functional capacity to work, he was not "disabled" and thus did not qualify for benefits.

After the administrative law judge issued her opinion, Pruitt sought review from the appeals council. Along with arguments that the administrative law judge's conclusions were wrong, Pruitt included a September 2019 psychological evaluation from Dr. June Nichols. Dr. Nichols reviewed Pruitt's medical records and the evaluations that Drs. Fleming and Scarborough had provided. She concluded that Pruitt's "[t]hought processes were within normal limits," that he had "grossly intact" recent memory functions, and that he could relay his personal history in detail. But she also opined that Pruitt struggled with "[i]mmediate memory functions," had learning disorders related to reading and writing, and was "likely unable . . . to deal with normal pressures in a competitive work setting." In Dr. Nichols's view, Pruitt would not be able to concentrate for more than two hours, keep a punctual work schedule, work without supervision, or maintain socially appropriate behavior. And she concluded that all of these limitations existed back to April 2017.

The appeals council denied Pruitt's request for review and upheld the administrative law judge's decision. It declined to consider Dr. Nichols's report because the evaluation was from September 2019 and, thus, it was not relevant to the claims beginning in April 2017.

Pruitt then appealed to the district court. He made four arguments: (1) the administrative law judge should have given more weight to his treating physicians' opinions; (2) his "unsuccessful work attempt" from 2018 should not have disqualified him from receiving benefits; (3) the appeals council erred by refusing to consider Dr. Nichols's report; and (4) the administrative law judge's decision was not supported by substantial evidence. Pruitt relied on the "treating physician rule"—a presumption in our caselaw that required the Social Security Administration to defer to a treating physician's opinion unless there is good cause to depart from it. *See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004).

The district court affirmed the denial of benefits. It concluded that, under new regulations, the treating physicians' opinions were no longer entitled to deference under the treating physician rule. *See* 20 C.F.R. § 404.1520c(a) (applicable to claims for disability benefits filed on or after March 27, 2017). The court also concluded that the administrative law judge's finding that the state psychiatric examiner's opinion was more credible than Dr. Scarborough's or Dr. Fleming's was supported by substantial evidence. And it found that substantial evidence supported the administrative

law judge's decision to discount Dr. Borlaza's negative evaluation of Pruitt's physical limitations because Dr. Borlaza's opinion was based on Pruitt's self-reporting and did not reflect the rest of Pruitt's medical records.

The district court also noted that the administrative law judge referred to Pruitt's 2018 work attempt as a "failed" one. So, the administrative law judge had not erred by considering Pruitt's attempt to find work as part of the total evaluation of the medical evidence. Finally, the district court agreed with Pruitt that the appeals council erroneously found Dr. Nichols's evaluation not to be chronologically relevant, because her conclusions related back to Pruitt's claims period. But the district court upheld the appeals council's decision because it found there was no reasonable probability that Dr. Nichols's opinion would have changed the administrative law judge's decision. *See* 20 C.F.R. § 404.970(a)(5). Dr. Nichols's report was "largely cumulative" of other doctors' opinions and her conclusions were "inconsistent with the medical records as a whole."

### III.

"We review de novo the district court's decision on whether substantial evidence supports the [administrative law judge's] decision." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Our review of the [administration's] decision is limited to an inquiry into whether there is substantial evidence to support [its] findings . . . and whether the correct legal standards were applied." *Id.* "Substantial evidence must do more than create a suspicion of

the existence of the fact to be established." *Id.* (quotation omitted). The administration's "factual findings are conclusive if supported by substantial evidence." *Id.*

## IV.

Pruitt raises five arguments on appeal. He argues that: (1) the district court should have remanded his benefits claim to the appeals council to consider Dr. Nichols's report; (2) the district court erred when it found that substantial evidence supported the administrative law judge's findings of fact; (3) the administrative law judge failed to give proper weight to Dr. Scarborough's medical opinion under the "treating physician rule"; (4) the district court should have found that the administrative law judge failed to show good cause for rejecting Drs. Fleming and Borlaza's opinions; and (5) the administrative law judge erroneously found that Pruitt's 2018 work attempt "preclude[d] benefits."

The administration argues that Pruitt has forfeited several of these issues, and we agree. For example, Pruitt's third issue depends on the "treating physician rule," but he ignores that the rule was abrogated for disability benefit claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c(b)(2). The district court applied the new regulations, and in *Harner v. Social Security Administration, Commissioner*, 38 F.4th 892 (11th Cir. 2022), we found that the new regulations abrogated our treating physician rule. *Id.* at 896 ("Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates our earlier precedents applying the treating-physician rule.").

To the extent Pruitt argues that the treating physician rule still applies, *Harner* forecloses his claim.  And he has forfeited any argument about the proper weight of Dr. Scarborough's opinion under the new regulations, which he neither cites nor acknowledges.  *See Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) (explaining that "a legal claim *or argument*" that has not been briefed before the court is deemed abandoned and its merits will not be addressed" (emphasis added)); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (appellants had forfeited argument by failing to "advanc[e] any arguments or cit[e] any authorities to establish" error).

Pruitt has also forfeited his second and fourth issues, both of which involve the sufficiency of the evidence underlying the administrative law judge's decision.  In *Harner*, we found that the appellant had forfeited several issues relating to the "substantiality of the evidence" because the argument portion of the appellant's brief—written by the same counsel who submitted Pruitt's brief in this case—"consist[ed] only of block quotations from and cursory mentions of various decisions of this and other courts" that "provid[ed] no meaningful explanation as to how the decision she cite[d] appl[ied] to her claim." *Harner*, 38 F.4th at 899.  So it is here.

When we peel back the many block quotations in Pruitt's brief, his arguments boil down to conclusory statements that the administrative law judge improperly failed to credit favorable medical opinions and "wrongly repudiated the opinions of the . . . medical experts." But Pruitt neither discusses the administrative law

judge's detailed explanation of its review of the medical evidence nor explains why the administrative law judge should have given more weight to his preferred physicians under applicable law. We find that he has forfeited these issues.[1]

That leaves two issues: whether the district court should have remanded Pruitt's claim for the appeals council to evaluate Dr. Nichols's opinion, and whether the district court erred in affirming the administrative law judge's consideration of Pruitt's 2018 work attempt. We address each in turn.

A.

The Social Security Administration allows claimants to submit additional evidence to the appeals council, after the administrative law judge has denied benefits, if the evidence is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). When a claimant properly presents new evidence after an administrative law judge has ruled and the appeals council upholds the administrative law judge's decision, the district court "must consider whether that new evidence renders the denial of

---

[1] Even if we reached the merits, we would readily conclude that the administrative law judge's findings were supported by substantial evidence. The administrative law judge carefully considered various medical records, the consistency of different healthcare providers' opinions about those records, and information she gathered from Pruitt's in-person hearing.

benefits erroneous." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).

Here, the district court agreed with Pruitt that the appeals council should not have found that Dr. Nichols's report concerned an irrelevant time frame. Although Dr. Nichols *evaluated* Pruitt after the administrative law judge's decision, her report indicated that her conclusions would have been valid as far back as April 2017, before Pruitt filed his initial claim for benefits. However, the district court went on to conclude that the evidence was not "material" because there was no reasonable probability that Dr. Nichols's report would have changed the administrative law judge's decision.

Pruitt claims that because the district court relied on a different justification than the appeals council for excluding evidence, we must automatically remand the decision to the appeals council to consider his claim along with Dr. Nichols's report. This is incorrect. Whether new evidence was properly before the appeals council is a matter of de novo review. *See Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). And, as part of our de novo review, we may consider factors that the appeals council did not when it initially refused to consider new evidence. *See id.* (considering both chronological relevance and materiality, when appeals council had considered only chronological relevance).

Here, the appeals council did not need to consider Dr. Nichols's report. As the district court correctly held, Pruitt has not

shown a reasonable probability that Dr. Nichols's report would have changed the decision to give him benefits. Almost everything in Dr. Nichols's report was cumulative of Drs. Fleming and Scarborough's opinions and identified the same limitations. And Dr. Nichols's conclusions were inconsistent with the other objective medical evidence that the administrative law judge considered. Where evidence submitted to the appeals council contradicts other records that the administrative law judge found more credible, the new evidence is not material and the appeals council did not need to consider it. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1310 (11th Cir. 2018).

## B.

Pruitt next argues that the administrative law judge should not have used his brief 2018 employment—what the administrative law judge called an "unsuccessful work attempt"—as a reason to deny him benefits. We find his argument unpersuasive.

In order to qualify for disability benefits, a claimant must show that he is not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Here, the administrative law judge found that Pruitt was *not* engaged in substantial gainful activity— she agreed with Pruitt that his 2018 work attempt had been "unsuccessful." However, she later discussed his work attempt as one of several facts that weighed against crediting Dr. Fleming's opinion that Pruitt had a neurocognitive disorder that caused difficulty remembering instructions. That was not improper, because Pruitt quit work in 2018 due to physical pain—not mental limitations.

Pruitt's arguments address only whether he was engaged in substantial gainful activity, not what facts the administrative law judge was permitted to consider when it determined whether Dr. Fleming's opinion was credible.  He has not shown any error.

**AFFIRMED.**